IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| **JESSE BARNES** | : | |
| **Tioga, PA 16946** | : | |
| | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **SHELL EXPLORATION** | : | |
| **AND PRODUCTION COMPANY** | : | |
| **APPALACHIA** | : | |
| **12880 Route 6** | : | |
| **Wellsboro, PA 16901** | : | |
| | : | **JURY TRIAL DEMANDED** |
| and | : | |
| | : | |
| **SHELL EXPLORATION AND** | : | |
| **PRODUCTION COMPANY** | : | |
| **150 N. Dairy Ashford Road** | : | |
| **Houston, TX 77079** | : | |
| | : | |
| and | : | |
| | : | |
| **SHELL OIL COMPANY** | : | |
| **150 N. Dairy Ashford Road** | : | |
| **Houston, TX 77079** | : | |
| | : | |
| Defendants. | : | |

_____ :

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Jesse Barnes, brings this action against her current employers,

Shell Exploration and Production Company Appalachia, Shell Exploration and

Production Company, and Shell Oil Company (together "Defendants").

Defendants's supervisory-level employees have engaged in gross and derogatory sexual and sexist conduct towards Plaintiff.  The same includes, but is not limited to, Plaintiff's male supervisor touching her inappropriately, including on her thigh and stomach; male supervisory-level employees taking a picture of Plaintiff's backside and saving it on their phones; Plaintiff's male supervisor telling Plaintiff that he thought about her while he was showering and showing her a picture that he took of himself in his underwear; male employees calling Plaintiff a "bitch"; male supervisors mocking Plaintiff when she expressed that the sex discriminatory conduct to which she was being subjected was unwelcome, and other extremely harassing and degrading conduct.  Plaintiff has made numerous complaints regarding the sex discriminatory conduct to which she has been subjected.  Rather than take appropriate action to remedy and/or correct the conduct and comments of a sexist and sexual nature, Defendants have punished Plaintiff, including failing to promote her, demoting her, compensating her less, and treating her in a hostile and dismissive manner.

Defendants engaged in sex discriminatory conduct, including sexual harassment, and then retaliated against Plaintiff based on her complaints of the same, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

II. **PARTIES**

1.     Plaintiff, Jesse Barnes, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.    Plaintiff is female.

3.    Defendant, Shell Exploration and Production Company Appalachia, is incorporated in Delaware, and has a principal place of business at 12880 Route 6, Wellsboro, Pennsylvania 16901.

4.    Defendant, Shell Exploration and Production Company, is incorporated in Delaware, and has a principal place of business at 150 North Dairy Ashford Road, Houston, Texas 77079.

5.    Defendant, Shell Oil Company, is incorporated in Delaware, and has a principal place of business at 150 North Dairy Ashford Road, Houston, Texas 77079.

6.    Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

7.    At all times material hereto, Plaintiff worked out of Defendants' Wellsboro, Pennsylvania location.

8.    At all times material hereto, Plaintiff was paid by and received her Form W-2 from Defendant Shell Exploration and Production Company.

9.    At all times material hereto, Defendants have held themselves out as a single, interconnected entity, collectively referred to in documents, literature, and website materials as "Shell."

10.    At all times material hereto, Defendants employed more than fifteen (15) employees.

11.    At all times material hereto, Defendants acted by and through its authorized agents, servants, workmen, and/or employees acting within the

3

course and scope of their employment with Defendants and in furtherance of Defendants' business.

12.     At all times material hereto, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

13.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

## III.     JURISDICTION AND VENUE

14.     The causes of action which form the basis of this matter arise under Title VII and the PHRA.

15.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

16.     The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

18.     On or about April 26, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of sex discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

19.     On or about May 1, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue for her Charge of Discrimination.  Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the Notice of Right to Sue (with personal identifying information redacted).

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

21.     Plaintiff began working at Defendants as a contractor in or about November 2010.  Due to Plaintiff's consistently excellent performance, she was hired by Defendants as a full time employee in or about September 2015 as a Maintenance Analyst.

22.     As Maintenance Analyst, Plaintiff reported to William Turney (male), Maintenance Supervisor.  Turney reported to Steve Craig (male), Operations Superintendent.

23.     On or about January 1, 2017, Plaintiff was demoted to the position of Senior Safety / Environmental Technician.

24.     As Senior Safety / Environmental Technician, Plaintiff reports to Steve Ellis (male), Health, Safety, Security, and Environmental Manager.  Ellis reports to Randy Burow (male), US/LA Assets Security and Environmental Manager.

25.     Plaintiff has consistently demonstrated excellent performance throughout her employment with Defendants.

26.     For the years that Plaintiff reported to Turney, Plaintiff was Turney's

only female direct report that exclusively reported to Turney and did not also report to another supervisor.

27.     To the best of Plaintiff's knowledge, Plaintiff was the lowest-paid Maintenance Analyst and the only female Maintenance Analyst at Defendants' Wellsboro location.

28.     Defendants have subjected Plaintiff to sex discriminatory conduct, including, but not limited to, the following:

> (a)     At an outdoor work event, several male supervisors and male coworkers asked Plaintiff why she was not wearing shorts, and asked Plaintiff if Turney could cut her pants into shorts;
>
> (b)     At the same event, male supervisors took a picture of Plaintiff's buttocks, without her consent, and saved the photo on their phones;
>
> (c)     Turney commented that another female at the same event was wearing shorts and kissed him on the cheek, suggesting that Plaintiff should do the same;
>
> (d)     Turney told Plaintiff that he thought about her while he was showering;
>
> (e)     Turney showed Plaintiff a photo he took of himself in his underwear;
>
> (f)     Turney regularly touched Plaintiff's leg, arm, and stomach during their one-on-one meetings, including: (i) resting his

hand on Plaintiff's thigh; (ii) resting his hand on Plaintiff's arm; (iii) pulling Plaintiff closer to him by wrapping his arm around her side and stomach; and (iv) sitting very close to Plaintiff;

(g)     Turney continued to touch Plaintiff inappropriately and sit very close to her even after Plaintiff asked him to stop and said that she did not want him, or any male managers or employees, to touch her;

(h)     Turney mocked Plaintiff when she told him and other male managers and employees that she does not like to be touched;

(i)      Male coworkers have indicated to Plaintiff, in front of Turney, that they believe Plaintiff uses her sexuality to get what she wants;

(j)      Male coworkers have told Plaintiff, in front of Turney, that, maybe if they wore tight pants and batted their eyes, they could get what they wanted, suggesting that this is what Plaintiff does;

(k)     Turney laughed at the sex-based comments male managers and employees directed at Plaintiff;

(l)      Turney asked Plaintiff if she thought about him over the weekend;

(m)    Turney sent Plaintiff text messages of a personal nature,

including but not limited to the following: asking Plaintiff if she missed him; asking Plaintiff if she is thinking about him; telling Plaintiff to smile; and telling Plaintiff about her coworkers' personal lives and relationships;

(n)     Males coworkers called Plaintiff a "bitch" at work;

(o)     Kenneth Foreman (male), Scheduler, in front of Hondo Blakley (male), Process Improvement Lead, ran his fingers through Plaintiff's hair without Plaintiff's consent.

(p)     Blakley mocked Plaintiff when she told Foreman to stop and that she does not like to be touched;

(q)     Foreman told Plaintiff that she sounded like his wife bossing him around;

(r)     Foreman asked Plaintiff what she accomplished in 2016, other than not dying her hair for a whole year;

(s)     Mark Hoover (male), Operations Supervisor, told Plaintiff that she was not smart enough to be able to perform a task because she is a woman and has blonde hair;

(t)     Turney told Plaintiff that she is "a hot blonde";

(u)     During work meetings, in front of her coworkers, Turney whispered in Plaintiff's ear, texted her, and pulled her aside, telling her, without limitation, to smile;

(v)     Turney told Plaintiff that she works well with male employees because she is a woman;

(w)   Male coworkers, in front of managers including Turney, referred to Plaintiff as pretty;

(x)   Turney mocked Plaintiff when she objected to comments about her appearance and told him that she does not come to work to hear that she is pretty;

(y)   Turney asked Plaintiff about and commented on Plaintiff's personal life and personal relationships, including but not limited to the following: asking Plaintiff questions, and appearing jealous, about her boyfriend; asking Plaintiff what she did over the weekend, where she went, and who she went out with; and telling male managers and employees what Plaintiff did over the weekend, where she went, and who she went out with;

(z)   Turney told Plaintiff that he thought it was funny when Plaintiff got into disagreements with female coworkers. When Turney overheard such disagreements, Turney, in front of Plaintiff's colleagues, imitated cat claws with his hands and made hissing noises.  Turney did this in team meetings, in front of Plaintiff's coworkers.  Plaintiff complained to Turney that she did not like when he engaged in such conduct;

(aa)  Despite Plaintiff's repeated requests for an explanation as to why she was the lowest-paid Maintenance Analyst, Plaintiff

did not receive an explanation;

(bb)   During a required CPR training course at Defendants, the
male instructor told Plaintiff to pick her "ass" up in front of her
male coworkers.  When Plaintiff complained to Turney about
this comment, following the training, he laughed and asked
Plaintiff, "well, did you pick it up?";

(cc)   Turney degraded Plaintiff and treated Plaintiff differently than
he treated male employees.  Plaintiff complained to Turney
about the same, indicating that he unjustly criticized her work
and ignored her professional accomplishments in a way that
he did not engage with male employees.

29.   As set forth above and detailed below, Plaintiff made complaints
regarding Defendants' sex discriminatory conduct.  Defendants failed to take
appropriate remedial and/or corrective action regarding Plaintiff's complaints, but,
rather, retaliated against Plaintiff.

30.   As set forth above, when Plaintiff objected to Defendants' sex
discriminatory conduct, including Turney touching her inappropriately and in a
sexual manner, she was ignored and/or mocked.

31.   Defendants continued to subject Plaintiff to sexually harassing and
sexist conduct even after she objected to the same.

32.   In or about May 2016, Plaintiff complained of sexual harassment to
Blakley.  Blakley has supervisory authority over Plaintiff and Turney.  Plaintiff
asked Blakley for help, and expressed that she was upset at the way she was

being treated by Turney and other male managers and employees because she is female.

33.    In response to Plaintiff's complaint, Blakley told Plaintiff that the same was out of character for her, and that she needed to make sure to control her emotions.  Blakley also told Plaintiff that Turney was inappropriate and not qualified to be a supervisor, and that she should start documenting Turney's conduct.  Blakley acknowledged that Plaintiff was the lowest-paid Maintenance Analyst.

34.    After Plaintiff complained regarding the sex discriminatory conduct to which she was subjected:

> (a)    Plaintiff was excluded from work-related meetings;
>
> (b)    Turney became short-tempered with Plaintiff;
>
> (c)    Turney started micromanaging Plaintiff and her work;
>
> (d)    Turney said that he needed to watch what he said around Plaintiff, which Plaintiff understood to be a reference to her complaints of sex discriminatory conduct.

35.    On or about July 18, 2016, during Plaintiff's mid-year performance review, Turney told Plaintiff that she makes good money for a woman and should not be upset with her pay grade.

36.    In or about October 2016, Plaintiff again complained of sex discrimination to Blakley and Turney.  Their only response to Plaintiff's complaint was that she needed to stop playing the victim.

37.    In or about November 2016, Defendants posted an open position of

Scheduler for which Turney and Blakley were the hiring managers.  As Plaintiff was qualified for the position, which would have been a promotion for her, she applied, and was interviewed, for the same.

38.    Turney and Blakley conducted Plaintiff's interview for the Scheduler position.  During the interview, Turney and Blakley laughed when Plaintiff told them that she wanted the position because she wanted to advance her career at Defendants.  Turney and Blakley also told Plaintiff that they did not think she would do well in the position.

39.    Defendants failed to select Plaintiff for the Scheduler position. They promoted into the position a less tenured male employee, who had less service time at Defendants, and in the group, than Plaintiff had.

40.    Defendants did not give Plaintiff a reason for failing to select her for the Scheduler position.

41.    After Defendants selected the male employee for the Scheduler position over Plaintiff, Turney told Plaintiff that he was worried that Plaintiff might have received the promotion because she had more time in the group than the male employee.

42.    In or about November 2016, Plaintiff complained to Defendants' Human Resources Department that she was being sexually harassed.

43.    At around the same time, Plaintiff complained to Craig regarding Defendant's failure to select her for the Scheduler position, including that she was not selected because she is female.  Plaintiff also complained to Craig that Turney had been sexually harassing her, and she told Craig that she submitted a

complaint to Human Resources regarding the sex discriminatory conduct to which she was being subjected.

44.     Shortly after Plaintiff made her complaints regarding the sex discriminatory conduct to which she had been, and was continuing to be, subjected, Defendants informed her that they were conducting an investigation regarding the same.  As part of Defendants' investigation, Plaintiff provided them with documentation regarding many of the instances of sex discrimination, including sexual harassment, to which Defendants had subjected her.

45.     In December 2016, Defendants informed Plaintiff only that they had concluded their investigation and found that Turney and Hoover violated Defendants' Code of Conduct.

46.     Defendants did not inform Plaintiff as to whether they were taking any action against Turney and Hoover.

47.     Defendants' Position Statement that they submitted to the EEOC stated that they concluded that Plaintiff's allegation that Turney told her that he thought about her while he was showering was not true (accepting Turney's denial).  Defendants came to that conclusion even though Turney admitted to making comments to co-workers about thoughts that he had in the shower and even though they concluded that Turney engaged in other inappropriate conduct about which Plaintiff complained.

48.     Defendants did not change Plaintiff's reporting relationships.  She continued to report directly to Turney, and Defendants continued to place her into situations in which she would be forced to interact with Hoover.

49.     In or about December 2016, following the investigation into Plaintiff's sex discrimination complaints, Greg Larsen (male), Operations Asset Manager, told Plaintiff that she needed to think about how she presents herself in the office and what she talks about at work.

50.     When Plaintiff asked Larsen what he meant by his comments, he said that Plaintiff must make sure she thinks about how she may come across. Plaintiff understood Larsen's comments to be blaming her for the sex discrimination, including sexual harassment, to which she has been subjected at Defendants.

51.     On or about January 1, 2017, Defendants demoted Plaintiff into the position of Senior Safety / Environmental Technician.

52.     Defendants told Plaintiff that she could not stay in her current position as Maintenance Analyst and told Plaintiff that her only option was to choose one (1) of three (3) lower-level positions.

53.     Defendants pressured Plaintiff into accepting the less desirable Senior Safety / Environmental Technician position.  In this position, Plaintiff has fewer job duties and responsibilities and less complex work than she had previously.

54.     Following the demotion, Defendants have not provided Plaintiff with the duties, training, or responsibilities that they told her that she would have in the position.

55.     Defendants did not give Plaintiff any explanation for demoting her.

56.     To the best of Plaintiff's knowledge, Plaintiff is the lowest-paid, and

only female, Senior Safety / Environmental Technician at the Wellsboro location.

57.     Plaintiff is the only female employee directly reporting to Ellis.

58.     In or about the end of January 2017, Plaintiff was provided with her 2016 year-end performance review.  Plaintiff received a negative rating, which was a lower rating than she had received in performance reviews before she had complained of sex discrimination.  Plaintiff was unjustly criticized for her performance, including her attitude, neither of which had been alleged issues before she had complained of discrimination.

59.     Plaintiff received a smaller bonus as a result of her unjustified 2016 year-end performance review.

60.     On or about April 6, 2017, Ellis told Plaintiff that her position was in jeopardy of being eliminated.  The stated reason was that Plaintiff was the most recent addition to the group.  Plaintiff understood this as a way for Defendants to pressure her to leave her employment with Defendants.

61.     On or about April 26, 2017, Plaintiff sent an email to Defendants, including Ellis, Burow, and Defendants' Human Resources managers, informing them that she filed a Charge of Discrimination with the EEOC, and attaching a copy of her signed Charge to the email.

62.     In or about October 2017, Plaintiff again complained to her supervisors that, because of her sex and her complaints of sex discrimination, she was placed in a dead-end job, was not given training opportunities, and has not been provided the guidance from her supervisors to advance in her career with Defendants.

63.    Plaintiff was not told that Defendants investigated her continued

complaints of sex discrimination and retaliation, or that Defendants took any

action to remedy the discriminatory and retaliatory conduct to which she was

being subjected.

64.    On or about January 29, 2018, Plaintiff again complained to

Defendants that she was continuing to be discriminated against based on her sex

and retaliated against based on her complaints of sex discrimination, including

having filed an EEOC Charge.  Plaintiff's written complaint included the following:

> "Male employees have been ignoring and avoiding me, and have
> made comments to me such as 'we've heard stories about you' and
> have asked me about my complaints of sex discrimination against
> the company.  I believe that the hostile and dismissive comments
> and conduct to which I am being subjected are discriminatory
> because of my sex and retaliatory because I filed an EEOC
> Charge."

65.    On March 6, 2018, Defendants informed Plaintiff only that

Defendants did not find that any form of discrimination or retaliation had

occurred.

66.    On March 28, 2018, Plaintiff applied for a posted Preventative

Maintenance Planner position for which she was qualified and which would have

been a promotion for her.

67.    Defendants failed to select Plaintiff, or even interview her, for the

Preventative Maintenance Planner position.

68.    On April 26, 2018, after Plaintiff contacted Brett Kirk (male), Hiring

Manager, to reiterate her interest in and qualifications for the Preventative

Maintenance Planner position, Plaintiff received an email from Kirk stating that

Defendants would be selecting someone else for the position.

69.    On April 27, 2018, Plaintiff received an email from Defendants, stating that she was not selected for the Preventative Maintenance Planner position.

70.    Defendants did not give Plaintiff a reason for failing to select her for the Preventative Maintenance Planner position.

71.    Defendants' demographics evidence a bias against female employees.  By way of example only, all six (6) of Defendants' senior management members are male and, out of Defendants' eight (8) executive committee members, seven (7) are male and only one (1) is female.

72.    Defendants have failed to provide Plaintiff with a legitimate, non-discriminatory reason for subjecting her to a hostile work environment, demoting her, compensating her less, and failing to promote her.

73.    No one at Defendants ever told Plaintiff what action, if any, was taken to correct or remedy the sex discriminatory and retaliatory conduct to which Plaintiff was and continues to be subjected.

74.    Plaintiff's sex was and is a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including failing to promote her, demoting her, compensating her less, and subjecting her to a hostile work environment.

75.    Plaintiff's complaints about, and expressed opposition to, Defendants' sex discriminatory, including sexually harassing, conduct was and is a motivating and/or determinative factor in Defendants' retaliatory treatment of

Plaintiff, including failing to promote her, demoting her, compensating her less, and subjecting her to a hostile work environment.

76.     Defendants failed to prevent or address the sex discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of sex discriminatory and retaliatory conduct.

77.     The retaliatory action taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

78.     As a direct and proximate result of the sex discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

79.     Defendants acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

## COUNT I - Title VII

80.     Plaintiff incorporates herein by reference paragraphs 1 through 79 above, as if set forth herein in their entirety.

81.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

82.     Said violations were done with malice and/or reckless indifference.

83.     As a direct and proximate result of Defendants' violation of Title VII,

Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

84.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

85.     No previous application has been made for the relief requested herein.

## COUNT II - PHRA

86.     Plaintiff incorporates herein by reference paragraphs 1 through 85 above, as if set forth herein in their entirety.

87.     Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

88.     Said violations were intentional and willful.

89.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

90.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

91.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA;

(i)     awarding Plaintiff the costs of suit, expert fees, and other disbursements, and reasonable attorneys' fees; and,

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: July 27, 2018                    BY: _____

Susan Saint-Antoine  (55799)
Caren N. Gurmankin (205900)
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676

Attorneys for Plaintiff,
Jesse Barnes