**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Jesse Barnes | : | Civil Action |
| Plaintiff | : | |
| | : | No. 4:18-cv-01497-MWB |
| v. | : | |
| | : | |
| Shell Exploration and Production | : | |
| Company Appalachia, et al. | : | |
| | : | |
| Defendant | | |

**DEFENDANTS' MOTION TO COMPEL
<u>MENTAL HEALTH EXAMINATION OF PLAINTIFF</u>**

Defendants, Shell Exploration & Production Company and Shell Oil Company ("Defendants" or "Shell") hereby move this Court to Compel the Mental Health Examination of Plaintiff.

1.     This matter involves a single-plaintiff alleged sexual harassment action wherein Plaintiff alleges, *inter alia*, that her supervisor harassed her for more than a year before she complained, and where Shell immediately separated Plaintiff from her supervisor upon receipt of such complaint.  Shell denies Plaintiff's allegations, and notes that Plaintiff was a short-term employee who suffered no adverse employment action, and indeed, continued to work at Shell for two and one-half years before leaving for a higher-paying job outside of Philadelphia where her boyfriend lived.

2.     Squarely at issue in this case is Plaintiff's mental health, as she alleges in her Complaint and repeatedly testifies in her deposition that she suffered severe physical and psychological injury and clinically diagnosed anxiety as a result of Defendants' alleged harassment, which she claims occurred from 2014 through November 2016 when she first complained.  Further, Plaintiff testified that as a result of her anxiety secondary to the alleged harassment, she was prescribed and took

medication to treat this medical condition.  <u>See</u> Charge of Discrimination, Exhibit "A", at

para. 2 (gg) and 8/2/19; Jesse Barnes Dep. Transcript, Exhibit "B" at 36:2-24, 37:1-14,

38:9-11, 39:9-23, 44:15-24, 45:1-12, 46:18-24, 47:1-2, 99:22-24, 100:1-6 and 221:1-9;

3.       In her Complaint and EEOC Charge of Discrimination, Plaintiff alleges:

(gg) "In or about November 2016, **I contacted a doctor because I was experiencing anxiety and crying spells**. **I was diagnosed with situational anxiety and depression. I have continued to experience anxiety, insomnia, and diarrhea because of the sexual harassment and discrimination to which I have been subjected at [Shell Oil]"**

Compl. [doc.1] at Exhibit 1, p. 4 of 6, para. (gg) (emphasis added); Charge of Discrimination, Exhibit A.

**(qq)The continuous sexual harassment and retaliation that I have experienced has caused me physical and emotional distress.**

Compl. [doc.1] at Exhibit 1, p. 5 of 6, para. (qq) (emphasis added); Charge of Discrimination, Exhibit A.

4.       Additionally, Plaintiff claims that the anxiety she suffered from the

harassment was so severe that she had to take short term disability/FMLA while

employed at Shell:

5.   Q:  What was the reason you went out on FMLA?
6.   A. **Because the anxiety that I was experiencing was so severe.**
7.   Q. Did you seek any treatment from any doctor because of this anxiety?
8.   A. **Yes.**
9.   Q. What doctor did you seek treatment with?
10. A. Courtney Babcock.

Exhibit B at 99:22-24, 100:1-6 (emphasis added)

5.      Finally, Plaintiff suffered <u>no loss of wages or other economic damages</u>.[1]
Rather, she seeks compensation solely related to alleged severe psychological distress
that she continually refers to in her pleadings and deposition.  <u>Id.</u>

6.      Notwithstanding the foregoing allegations and testimony, when
Defendants' counsel in good faith requested that Plaintiff voluntarily submit to an
independent mental health exam, without out the need for court intervention, she replied
that, in order to obtain and schedule the exam, Defendants must engage in motion
practice, without any explanation for Plaintiff's lack of consent to the exam.  <u>See</u>,
8/16/19-8/19/19 E-Mail Exchange, Exhibit "C".

7.      However, before filing a motion, defense counsel made a second attempt
to secure Plaintiff's voluntary agreement to submit to a Rule 35 exam, particularly in
light of the fact that there had been significant and disproportion motion practice given
the lack of economic damages, low value of the case, simple and straight forward
nature of the case, and high chance of a defense finding. As such, on January 13, 2020,
defense counsel requested Plaintiff's agreement; however, Plaintiff's attorney again
resisted Defendants' counsel's good faith and reasonable request for the independent
exam, stating that Defendants were required to resort to motion practice under Rule 35.
<u>See</u>, 1/13/20  E-Mail Exchange, Exhibit "D".

8.      Federal Rule of Civil Procedure 35(a) states in pertinent part, "[t]he court
may order a party whose mental or physical condition is in controversy to submit to a

---

[1] Plaintiff received compensation increases over the course of the two and one-half years
she continued to work at Shell after she complained.

mental examination by a suitably licensed or certified examiner."  Fed. R. Civ. P. 35(a)(1).

9.      In order to obtain the court's permission to conduct a mental examination of plaintiff, a defendant must demonstrate that plaintiff's mental condition is "in controversy" and that "good cause" exists to conduct the requested examination. Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964) ("Rule 35 ... requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination ... has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause'...."). "In controversy" and "good cause" are necessarily related. Id. at 118-19.

10.     The Schlagenhauf Court also set forth that a plaintiff "who asserts mental or physical injury . . . provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Id. at 119.

11.     A plaintiff may not avoid a Rule 35 examination simply on the grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available. Jackson v. Entergy Operations, Inc., Nos. Civ.A. 96-4111, Civ.A. 97-0943, 1998 U.S. Dist. LEXIS 752, at *2 (E.D. La. Jan. 26, 1998); Ferrell v. Shell Oil Co., Civ. A. No. 95-0568, 1995 U.S. Dist. LEXIS 17647, at *1 (E.D. La. Nov. 20, 1995).

12.     Even where a plaintiff chooses to forgo the use of an expert, courts have found that a defendant should not be compelled to limit its case to mere cross examination, as expert testimony can be essential to afford a defendant adequate

opportunity to challenge the plaintiff's claim. <u>Womack v. Stevens Transp., Inc.</u>, 205 F.R.D. 445, 447 (E.D. Pa. 2001) ("The promulgators of Rule 35 deemed that the opportunity to cross-examine was an 'insufficient test of truth' and as a result, independent examinations were prescribed.") (<u>quoting</u> <u>Tomlin v. Holecek,</u> 150 F.R.D. 628, 632 (D. Minn. 1993)); <u>Bethel v. Dixie Homecrafters, Inc.</u>, 192 F.R.D. 320, 322-23 (N.D. Ga. 2000) (quoting <u>Ali v. Wang Labs., Inc.</u>, 162 F.R.D. 165, 168 (M.D. Fla. 1995)).

13.　　At her deposition, Plaintiff testified as follows:

> Q: So you started seeing Ms. Laumiller [Plaintiff's mental health counselor] sometime in 2017, correct?
> A. Yes.
> Q. And it's your testimony you started to seeing her at the recommendation of your sister Lori and Dr. Babcock [Plaintiff's primary care/family physician], that they suggested that you see a therapist, correct?
> A. A counselor, yes.
> Q. A counselor. For what reason did your sister Lori tell you to see a counselor?
> **A. To help my anxiety.**
> Q. Any other reason why your sister told you to see Dr. Laumiller -- or Ms. Laumiller?
> **A. No.**
> Q. Why did Dr. Babcock tell you to see a counselor?
> **A. My anxiety and how to cope with.**
> Q. Cope with what?
> **A. Anxiety**.
> Q. Did Dr. Babcock attribute your anxiety to any triggering event?
> **A. Yes**.
> Q. What did Dr. Babcock associate your anxiety being caused by?
> **A. What I was subjected to at Shell.**
> Q. Did you tell Dr. Babcock what you were subjected to at Shell?
> A. Yes.
> Q. Did she prescribe you any medications?
> **A. Yes.**
> Q. What did she prescribe you?
> **A. I don't know the technical name for it, but it was a low dosage anxiety medication.**
> Q. When did she first prescribe this medication to you?
> A. I don't remember the exact time. **I think it was in 2017 though.**

Exhibit "B" at 36:2-24, 37:1-14 (emphasis added)

           \*\*\*

      Q: Did you actually take the medication that Dr. Babcock prescribed for
you?
      **A.     I did.**

Exhibit "B" at 38:9-11 (emphasis added)

           \*\*\*

      Q:  When was the last time you took any type of medication for your
anxiety?
      A. **2018.**
      Q. Was this anxiety related to Shell or was this overall anxiety?
      A. **It was related to Shell.**
      Q. Prior to 2017, had anyone ever diagnosed you with having anxiety?
      A. **No.**
      Q. Had you ever been treated for any type of mental or psychological
issues?
      A. **No.**
      Q. Had you ever sought any type of therapy or counselling?
      A. **No.**

Exhibit "B" at 39:9-23 (emphasis added)

           \*\*\*

      Q. Let's go back to Ms. Laumiller. You indicated that you started seeing
Ms. Laumiller sometime in 2017, correct?
      A. Correct.
      Q. When did you stop seeing Ms. Laumiller?
      A. Shortly after that in -- or it was I think 2018.
      Q. Did you start seeing Ms. Laumiller late 2017 or mid or early 2017; if you
recall?
      A. I don't recall.
      Q: How many visits did you have with Laumiller?
      A. I believe three, maybe more.
      Q. Why is it that you stopped seeing Ms. Laumiller?
      A. I didn't think I was really getting the support I was looking for.
      Q. What type of support were you looking for from a counselor or a
therapist?
      **A. I was looking for more ways to cope with my anxiety and having to
work in the work environment that I was in.**

Exhibit "B" at 44:15-24, 45:1-12 (emphasis added)

***

Q: Do you have any plans to see a therapist?
**A. Yes.**
Q. Do you have someone in mind?
A. No.
Q. Do you plan to see the therapist about what happened with Mr. Deming [Plaintiff's boyfriend] or do you plan to see the therapist about what happened at Shell?
**A. What happened at Shell**.

Exhibit "B" at 46:18-24, 47:1-2 (emphasis added)

***

Q:  What was the reason you went out on FMLA?
A. **Because the anxiety that I was experiencing was so severe.**
Q. Did you seek any treatment from any doctor because of this anxiety?
A. **Yes.**
Q. What doctor did you seek treatment with?
A. Courtney Babcock.

Exhibit "B" at 99:22-24, 100:1-6 (emphasis added)

***

Q. When you were out on short-term disability, were you under the care of a doctor?
**A. Yes.**
Q. What doctor were you under the care of?
A. Courtney Babcock and Shell had assigned me a nurse you through their program.
Q. For what reason were you out on disability? Because of stress?
**A. Anxiety.**

Exhibit "B" at 221:1-9 (emphasis added)

***

14.     In accordance with her own pleadings and sworn deposition testimony,

Plaintiff's mental health condition is clearly "in controversy" as it is inextricably

intertwined with the full story that she will testify  to at trial. See Ferrell v. Shell Oil Co.,

No. 95-0568, 1995 U.S. Dist. LEXIS 17647 at * 6 (Nov. 21, 1995) (ordering psychological exam of plaintiff in a gender discrimination, sexual harassment and hostile work environment case where Rule 35 requirements met); Dahdal v. Thorn Americas, Inc. d/b/a Rent-A-Center, No. 97-2119-GTV, 1998 U.S. Dist. LEXIS 832 at *5 (D. Kan. Jan. 28, 1998) (ordering mental health exam in sexual harassment and gender discrimination suit where the plaintiff claimed she suffered from depression and suicidal thoughts and she underwent pre-suit mental health treatment for sexual abuse); Robinson v. HD Supply, Inc., No. 2:12-cv-604, 2013 U.S. Dist. LEXIS 101703 at *5 (E.D. Cal. July 19, 2013) (emotional distress not "garden-variety" where plaintiff alleged that he suffered from "anxiety, sleeplessness, nightmares, nervousness, depression, worry, loss of appetite, headaches, stress, anger, feelings of hopelessness, feelings of isolation, embarrassment, mental anguish, indignation, apprehension, and feelings of betrayal").

15.     Moreover, good cause exists for the independent mental health exam of Plaintiff, as Plaintiff has posited a direct causal link between her "severe" psychological injuries and Defendants' alleged sexual harassment.  See Barry v. Shell Oil Co., No. 2:15-00004, 2017 U.S. Dist. LEXIS 52626 at *9 (D. Ala. Apr. 3, 2017) (good cause shown where plaintiff's emotional distress not of the "garden variety" damages); Terry v. Promise Hosp. of Ascension, Inc., No. 13-128-SDD-RLB, 2014 U.S. Dist. LEXIS 38835 at * 6 (M.D. La. March 25, 2014) (good cause existed for IME where plaintiff alleged defendant's conduct caused her to enter a psychiatric institution); Thiessen v. Gen. Elec. Cap. Corp., 178 F.R.D. 568 (D. Kan. 1998)  (plaintiff's mental examinations were

permissible because the plaintiffs alleged more than "garden variety" emotional distress claims); Ali v. Wang Labs., Inc., 162 F.R.D. 165, 167-68 (M.D. Fla. 1995) (same).

16.     Plaintiff's mental health is in controversy and good cause exists for an independent mental health examination. Thus, Defendants should have the opportunity to provide rebuttal evidence about Plaintiff's diagnosis and treatment that she alleges resulted from Defendants' actions.

17.     Defendants also seek attorneys' fees for time that their attorneys spent attempting to resolve the discovery dispute prior to filing the Motion to Compel as well as drafting the Motion and supporting papers. Should the Court grant Defendants' Motion to Compel, pursuant to Rule 37(a)(5) it should award reasonable attorneys' fees and expenses incurred in "making the motion" when a motion to compel is granted or granted in part. Smith v. Diamond Offshore Co., No. 07-3954, 2009 U.S. Dist. LEXIS 38485 at *4 (E.D. La. April 22, 2009) (awarding attorney's fees and costs where party opposed Rule 35 exam); Swapalease, Inc. v. Sublease Exchange.Com, Inc., No. 1:07-CV-45, 2009 U.S. Dist. LEXIS 40163 at *4 (S.D. Ohio Apr. 27, 2009) (finding that because the Rules require the party filing the motion to compel to certify that it had made a good faith effort to resolve the discovery issue before filing such motion, extrajudicial efforts should be part of recoverable expenses).

**WHEREFORE,** Defendants respectfully request this Court to grant their Motion to Compel the Mental Health Examination of Plaintiff.

/s/Kathleen Kirkpatrick
Joe H. Tucker, Jr.
Kathleen Kirkpatrick, Esquire
Tucker Law Group, LLC
Ten Penn Center
1801 Market Street, Suite 2500

Philadelphia, PA 19107
*Counsel for Defendants*

DATE:  January 21, 2020