**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSE BARNES, | No. 4:18-CV-01497 |
| Plaintiff, | (Judge Brann) |
| v. | |
| SHELL EXPLORATION AND PRODUCTION COMPANY APPALACHIA, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

**MAY 25, 2021**

## I.  BACKGROUND

Plaintiff Jesse Barnes sued Defendants Shell Exploration and Production Company Appalachia, Shell Exploration and Production Company, and Shell Oil Company (together, "Shell") for violations of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.  She alleges that Shell's supervisory-level employees discriminated against her because of sex and retaliated against her when she complained about being harassed.  Discovery has concluded and Shell has moved for summary judgment. The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.	DISCUSSION

### A.	Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment.  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3]  "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4]  "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of

---

[1]	*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2]	Fed. R. Civ. P. 56(a).
[3]	*Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[4]	*Clark*, 9 F.3d at 326.
[5]	*Id.*

proof that would apply at the trial on the merits."[6] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may,

---

[6]  *Liberty Lobby, Inc.*, 477 U.S. at 252.
[7]  *Id.*
[8]  *Id.*
[9]  *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[10]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[11]  *Id*.
[12]  *Liberty Lobby*, 477 U.S. at 250.
[13]  Fed. R. Civ. P. 56(c)(1).
[14]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[15]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[16]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

## B.    Undisputed Facts

With that standard outlining the Court's framework for review, I now turn to the undisputed facts of this matter.  There are few, as the parties contest almost every single alleged fact.

Jesse Barnes began working at Shell as a temporary contract employee in 2010, assigned to Shell's Wellsboro, Pennsylvania location.[20]  In 2014, Barnes began working as a Maintenance Analyst, supervised by William Turney.[21]  Barnes was hired as a full-time Shell employee in September 2015.[22]

---

[15]  Fed. R. Civ. P. 56(e)(2).
[16]  Fed. R. Civ. P. 56(c)(3).
[17]  *Liberty Lobby*, 477 U.S. at 249.
[18]  *Id*.
[19]  *Id*. at 249–50 (internal citations omitted).
[20]  Doc. 97-3 ¶ 1; Doc. 103-3 ¶ 1.
[21]  Doc. 97-3 ¶ 8; Doc. 103-3 ¶ 8.
[22]  Doc. 97-3 n. 2; Doc. 103-3 n. 2.

At some point during Barnes's employment, she began to experience what she believed to be sexual harassment from a number of supervisors, including Turney. She filed formal complaints against Turney in November 2016.[23] Subsequent to those complaints, Barnes received a negative performance review.[24] Barnes complained that her review was the result of discrimination.[25]

Shell has a number of policies, including a Code of Conduct, an Anti-Harassment Policy, and an Equal Opportunity Policy.[26] After receiving Barnes's complaint, Shell began an investigation. Megan Kloosterman was the investigator assigned to the case.[27] The investigation took place over three days in December 2016.[28] Kloosterman interviewed twelve employees, including Barnes and Turney.[29] Kloosterman determined that Turney violated Shell's Code of Conduct for harassment.[30]

At some point during, or shortly after the investigation, Barnes was transferred to a different position as an HSE Safety technician.[31] She began her

---

[23] Doc. 97-3 ¶ 23; Doc. 103-3 ¶ 23.
[24] Doc. 97-3 ¶ 75; Doc. 103-3 ¶ 75.
[25] Doc. 97-3 ¶ 76; Doc. 103-3 ¶ 76.
[26] Doc. 97-3 ¶ 85; Doc. 103-3 ¶ 85.
[27] Doc. 97-3 ¶ 153; Doc. 103-3 ¶ 153.
[28] Doc. 97-3 ¶ 156; Doc. 103-3 ¶ 156.
[29] Doc. 97-3 ¶ 157; Doc. 103-3 ¶ 157.
[30] Doc. 97-3 ¶ 159; Doc. 103-3 ¶ 159.
[31] Doc. 97-3 ¶ 167; Doc. 103-3 ¶ 167.

new position in January 2017.[32]  Eventually, Barnes resigned from Shell in 2019 to accept a position with another company.[33]

## C. Analysis

Although there are only two counts in the complaint (one under Title VII and the other under the Pennsylvania Human Relations Act), Barnes raises multiple theories of liability.[34]  Specifically, she alleges that: (1) Shell discriminated against her based on sex; (2) Shell subjected her to a hostile work environment; (3) Shell retaliated against her; and (4) Shell subjected her to a retaliatory hostile work environment.

Shell purports to have moved for summary judgment on all counts.  Barnes disputes this characterization.  Shell has, indeed, moved on all counts, but Shell's opening brief does not address all of Barnes's theories of liability.  Therefore, even to the extent that Shell technically moved for summary judgment on certain theories, Shell may not have demonstrated an entitlement to summary judgment.  I consider each of Barnes's claims and Shell's arguments.

### 1. Discrimination Based on Sex

Title VII prohibits discrimination on the basis of, among other things, sex. To sustain a sex discrimination claim, a plaintiff must show that "1) s/he is a

---

[32]  Doc. 97-3 ¶ 178; Doc. 103-3 ¶ 178.
[33]  Doc. 97-3 ¶ 90; Doc. 103-3 ¶ 90.
[34]  The analysis of the PHRA claims is identical to the Title VII analysis.  *See Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir.2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").

member of a protected class, 2) s/he was qualified for the position s/he sought to attain or retain, 3) s/he suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination."[35]  Such claims are adjudicated under the standard *McDonnell Douglas Corp. v. Green* burden-shifting framework.[36]  Assuming Barnes establishes the prima facie case, I then "ask whether the employer has advanced a legitimate reason for its conduct."[37]  If the employer can provide a satisfactory explanation, the plaintiff then has "an opportunity to prove that the employer's proffered reason is pretextual."[38]  Shell disputes the third and fourth prongs of this claim, and argues that even if Barnes could make out a prima facie case, she is unable to dispute Shell's nondiscriminatory reason for transferring her to a new position.

The Court is convinced by Shell's argument as to the transfer.  Even if Barnes could establish that the transfer was an adverse employment action and show causation, she has fails to provide any evidence that Shell's proffered nondiscriminatory explanation is pretextual.  Shell asserts that Barnes was transferred as a result of the investigation, and as a way of getting her away from the people she said harassed her.  Although Barnes discusses the standard

---

[35]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).
[36]  411 U.S. 792 (1973).
[37]  *Jones v. Southeastern Pa. Transp. Authority*, 796 F.3d 323, 326 (3d Cir. 2015).
[38]  *Id.*

involving the third stage of the burden-shifting framework, she never introduces any evidence to point out any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Shell's argument.[39]  Indeed, the word "pretext" (or any variant of the word) appears only once in Barnes's entire brief in opposition to the motion for summary judgment.  She cannot meet her burden without addressing the question directly.[40]  Therefore, the Court is required to grant summary judgment on the sex discrimination claim, insofar as Barnes's transfer is concerned.

But Barnes also argues that she was discriminated against because Shell hired a less qualified male employee for a position to which she applied.  Shell did not address this question in its opening brief, and did not do so until its reply brief, after Barnes pointed out this deficiency in Shell's papers. Shell attempts to obfuscate this point and shoehorn a discussion on this issue into its reply brief, but this effort fails because arguments not raised in opening briefs are waived and arguments cannot be introduced for the first time in reply briefs.[41]  The Court does

---

[39] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[40] The closest Barnes comes to mentioning any pretext is to say that "Defendants' assertions as to why they placed Plaintiff into the less desirable HSE Safety Technician position rely on a disputed issue of fact." Doc. 112 at 36-37.  But this is insufficient to survive summary judgment, in large part because Barnes has to do more than "simply show that the employer's decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).  Here, she has not even shown that Shell's reasoning was incorrect; she merely alleges that the parties see things differently.  Without providing more than this to support a finding of pretext, Shell is entitled to summary judgment on this issue.

[41] *See, e.g.*, *United States v. Medeiros*, 710 F.Supp. 106, 110 (M.D. Pa. 1989) ("It is improper for a party to present a new argument in his or her reply brief."); *see also Jacoby v. Wal-Mart*

not consider the facts Shell introduces in its reply brief to demonstrate its entitlement to summary judgment on this issue. Therefore, Barnes may proceed on her discrimination claim, but only as to the failure-to-promote theory.

### 2. Retaliation for Reporting Discrimination

Next, Barnes claims that Shell retaliated against her in violation of Title VII and the PHRA. To make out a claim for retaliation under either statute, a plaintiff must establish: (1) that she engaged in "protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[42] Shell argues that Barnes cannot establish the second and third prongs of this claim. Barnes is effectively raising three theories of retaliation: first, that Shell retaliated against her by assigning her to a new position; second, that Shell retaliated against her by giving her a poor performance review; and third, that Shell failed to promote her to positions which she was qualified for. I consider each theory in turn. If Barnes is able to establish her prima facie case, the burden shifts back to Shell to provide a legitimate, non-retaliatory explanation for its decisions. If Shell succeeds, the burden shifts once more to Barnes, who must "convince the factfinder both that the employer's

---

*Stores, Inc.*, 2010 11577670 at *8 (M.D. Pa. Mar. 23, 2010) ("Importantly, arguments raised in the first instance in a reply brief are waived for summary judgment purposes.").
[42] *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

proffered explanation was false, and that retaliation was the real reason for the adverse employment action."[43]

### a.  Shell's Reassignment of Barnes

The first theory of retaliation offered by Barnes is that Shell assigned her to a less-desirable position within the company after they investigated her claims of harassment.  Normally, a lateral move within a company or a mere change in title will not constitute a Title VII violation.  Shell attempts to characterize Barnes's move as such a lateral transfer.  But "if the reassignment is less desirable, even if the employee loses neither rank nor salary, the employee may have a Title VII claim."[44]  Here, there appears to be a genuine dispute of material fact as to the relative quality of Barnes's previous and subsequent work assignments.  A jury could find that Barnes's reassignment to (what may have been) an administrative position was arguably less substantive, and therefore less likely to advance her career.

But Barnes fails to show that she was moved to this new position because she complained of discrimination.  Even assuming she had, however, Shell has offered an appropriate non-discriminatory reason for reassigning Barnes: she asked to be moved away from Turney, and Shell was trying to address the allegations she made.  Barnes has failed to introduce any evidence that this non-discriminatory

---

[43] *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).
[44] *Brugh v. Mount Aloysius College*, 432 F.Supp.3d 566, 581 (W.D. Pa. 2020).

rationale is pretextual, and indeed, failed to address that portion of the burden-shifting framework at all.[45]  Therefore, the Court will not allow Barnes to proceed any further with this theory of retaliation.

### b.    The Negative Performance Review

The second theory of retaliation involves a poor performance review that Shell gave Barnes.  This theory is easily addressed because Shell offered no argument on the failure-to-promote claim, as discussed above.  Although Shell directed the Court to several pages on which it claims to have addressed the performance review, the Court was unable to find any argument on this point. Therefore, the retaliation claim survives on this theory.

### c.    Failure to Promote

The final theory of retaliation involves the claim that Shell failed to promote Barnes to positions for which she was qualified.  This claim survives for the same reason as the performance review theory.  Shell has not shown an entitlement to summary judgment, and the Court declines to consider the arguments raised for the first time in Shell's reply brief.  Barnes's retaliation claim may proceed on a failure to promote theory.

---

[45]  *See Young v. City of Phila.*, 651 Fed.Appx. 90, 97 (3d Cir. 2016) ("[F]or a plaintiff to prevail at the pretext stage, he or she must produce evidence showing that the employer's reason for its action was false and retaliation for engaging in the protected activity was the real reason, or 'but-for' cause, for its actions.").

### 3. Hostile Work Environment

Discrimination that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment" is prohibited under Title VII.[46]  To establish a hostile work environment, Barnes "must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."[47]  A claim of hostile work environment "recognizes that less severe isolated incidents which would not themselves rise to the level of retaliation" may nevertheless, when taken together, "be enough to create a hostile work environment."[48]  "To judge whether such an environment is hostile or abusive, [a court] must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[49]

Shell contests each element but the third.[50]  Shell first argues that Barnes was not discriminated against because of sex.  Barnes has put forth enough

---

[46]  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).
[47]  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).
[48]  *Komis v. Secretary of United States Dept. of Labor*, 918 F.3d 289, 293-94 (3d Cir. 2019).
[49]  *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).
[50]  Shell has reserved the right to challenge the third element at trial.  *See* Doc. 98 at 13 n. 4.

evidence, however, that a jury could find in her favor. For example, Barnes introduced evidence that a male supervisor would repeatedly "come up behind [her] and put his hands through [her] hair."[51] There was plenty more. Another male supervisor showed Barnes a picture of himself wearing nothing but his undergarments.[52] That same supervisor referred to Barnes as a "hot blonde" and made numerous off-color comments to her.[53] A third supervisor took a picture of Barnes's buttocks at a charity golf event and asked how much money she thought he could get for the picture.[54] Barnes has further identified several other facts that could lead a jury to find that she was discriminated against because she was a woman.

Next, Shell suggests that any harassment was not severe or pervasive enough to support a Title VII claim. Shell faces an uphill battle on summary judgment here. This issue "is particularly unsuited for summary judgment, because whether the harassment or discrimination is sufficiently severe or pervasive to create an abusive work environment is quintessentially a question of fact."[55] The number of incidents which Barnes reported could lead a jury to find that this conduct was severe or pervasive, as could a qualitative review of the evidence. Simply put, there is enough here to let a jury decide the question on severity or pervasiveness.

---

[51] Doc. 103 Ex. 5 (Shell_0001112).
[52] *Id*. (Shell_0001113).
[53] *Id*.
[54] *Id*. (Shell_0001114-Shell_0001115).
[55] *Syed v. YWCA of Hanover*, 906 F.Supp.2d 345, 356 (M.D. Pa. 2012).

Shell's next objection is that Barnes cannot show that any discrimination would have affected a reasonable person in similar circumstances. Shell claims that Barnes's "co-workers were subjected to the same environment" as she was, and that the "behaviors reflect Mr. Turney's general style of interaction with his entire team, and cannot be shown to have affected the Plaintiff any differently than anyone else."[56] But Barnes has introduced evidence that Turney treated her differently than he treated the male employees. Shell's first argument therefore falls flat. And Shell's allegation that Barnes was not affected differently goes to her subjective detriment, a prong of the claim which Shell said it was not contesting here.[57]

Finally, the Court considers whether *respondeat superior* liability exists in this matter. Although sexual harassment by a supervisor is usually considered outside the agency relationship, an employer may still be held liable where the supervisor was "aided in accomplishing the tort by the existence of the agency

---

[56] Doc. 98 at 25.

[57] The Court also notes that although Shell explicitly refused to contest the third prong of this claim, it includes an argument that Barnes's delay in formally complaining about the alleged discrimination and her involvement in workplace banter offer reason to deny her claim. This argument does not go to any of the four prongs that Shell has moved on, and the Court declines to consider any argument as to whether the harassment was subjectively detrimental to Barnes. This argument would fail even if it were properly presented, because although she "engaged in certain unprofessional conduct, the comments and conduct to which she was subject were often worse and apparently uninvited." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168-69 (3d Cir. 2013). Furthermore, "the inherently subjective question of whether particular conduct was unwelcome presents difficult problems of proof and turns on credibility determinations" which are ill-suited for summary judgment. *Id*.

relation."[58] Shell does not appear to contest whether this prong has been met in the first instance, but has invoked the *Faragher-Ellerth* affirmative defense, which allows an employer to avoid liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[59]

This affirmative defense is only available when the harassment does not result in a "tangible employment action."[60] When a tangible employment action has been taken, the employer is strictly liable and is not entitled to the benefit of the *Faragher-Ellerth* defense. "The Supreme Court has described a tangible employment action as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[61]

There are genuine issues of material fact that preclude summary judgment, even assuming Shell is entitled to invoke the *Faragher-Ellerth* defense. The Court recognizes that Shell maintained a written Code of Conduct, as well as an anti-

---

[58] *Moody v. Atlantic City Board of Education*, 870 F.3d 206, 216 (3d Cir. 2017) (quoting Restatement (Second) of Agency § 219(2)(d) (Am. Law Inst. 1958)).

[59] *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

[60] *Minarsky v. Susquehanna County*, 895 F.3d 303, 310 (3d Cir. 2018).

[61] *Id.*

harassment policy, but questions remain as to whether Shell has met its burden to show that it exercised reasonable care to prevent and to promptly correct the harassing behavior. The mere existence of these policies is not dispositive, despite the amount of emphasis Shell puts on that idea. Instead, the Court must ask, for example: "Was the policy in place effective?"[62] Was Shell's response reasonable? Barnes's expert witness, Michael J. Torchia, has outlined several potential deficiencies with Shell's response to Barnes's complaints.[63]

Torchia concludes, among other things, that Shell's investigator was insufficiently qualified, the investigation was not conducted reliably, the investigator was unfamiliar with company policies, and she failed to investigate all of Barnes's complaints. The facts Torchia points to in defense of these conclusions, supported by the record, show that "there exists enough of a dispute of material fact, and thus a jury should judge all of the facts as to whether [Shell] exercised reasonable care to prevent and correct promptly any sexually harassing behavior."[64] Shell attempted to exclude Torchia's testimony, but this motion was denied.[65] Even without Torchia's report, however, the record supports a finding that a jury should decide this question. Finally, because I have determined that judgment as a matter of law would be inappropriate on the first prong of the

---

[62] *Id*. at 313.
[63] *See* Doc. 96 Ex. A.
[64] *Minarksy*, 895 F.3d at 313.
[65] *See* Doc. 117, 118.

*Faragher-Ellerth* defense, I do not reach the second prong.  Summary judgment is denied as to Barnes's hostile work environment claim.

### 4.    **Retaliatory Hostile Work Environment**

Barnes's final claim is that she was subjected to a hostile work environment in retaliation for having reported the alleged harassment.[66]  A plaintiff must show that "(1) [S]he suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present."[67]  Some courts have noted that the "usual discriminatory hostile work environment framework applies equally to claims of retaliatory hostile work environment,"[68]  but others have also accurately acknowledged that the "law of retaliatory hostile work environments remains somewhat unsettled."[69]

---

[66]   Barnes suggests that Shell did not move for summary judgment on this claim either. I disagree. Shell explicitly notes that the "communications that occurred after the Plaintiff complained to HR, from the two-and-one-half-year period of January 2017 through to her resignation in April 2019, were even less severe and frequent."  Doc. 98 at 23.  I construe this as an argument on the retaliatory hostile work environment and consider it on the merits.

[67]   *Komis v. Secretary of United States Dept. of Labor*, 918 F.3d 289, 293 (3d Cir. 2019).

[68]   *Anselmo v. City of Phila.*, 2021 WL 308132 at *15 (E.D. Pa. Jan. 29, 2021).  *See also King v. Pennsylvania Dep't. of Corrections*, 2020 WL 5505367 at *7 (W.D. Pa. May 5, 2020).

[69]   *Smith v. RB Distribution, Inc.*, 498 F.Supp.3d 645 (E.D. Pa. 2020).  Although the parties do not note this issue, there appears to be some disagreement among the District Courts within the Third Circuit as to whether I should apply a "severe or pervasive" standard in retaliatory hostile work environment cases, or if I should ask whether the hostile environment was materially adverse such that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Compare Smith with Anselmo*.  The lack of briefing on this question also counsels against granting summary judgment, as the material adversity standard would seem more favorable to plaintiffs.

Of course, in this context, the Court only considers the environment that existed *after* Barnes spoke out about being harassed. Shell fails to adequately distinguish its briefing on the question of the hostile work environment and the retaliatory hostile work environment. It is not until its reply brief that Shell meaningfully engages with the distinctions between Barnes's claims, but at that point, it is too late.

As discussed previously, the only potentially retaliatory action addressed by Shell in its opening brief was the decision to transfer Barnes. Shell has not demonstrated an entitlement to summary judgment on each prong. For example, Shell does not offer any evidence that would preclude a finding that Barnes was subjected to discrimination because she spoke out about the alleged harassment. Likewise, the failure to discuss the second prong in the retaliatory hostile work environment context is particularly important because the "question [of] whether a retaliatory action is 'materially adverse' under *Burlington Northern* is a question of fact."[70] The Court makes no comment on the strength of Barnes's claim of a retaliatory hostile work environment, but it seems clear that Shell has not demonstrated that it is entitled to summary judgment on this issue.

---

[70] *King v. Pennsylvania Dep't. of Corrections*, 2020 WL 5505367 at *7 (W.D. Pa. May 5, 2020).

## III.    CONCLUSION

Shell's motion for summary judgment is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge